**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MISTYRISE INTERNATIONAL LIMITED,

                    Plaintiff,

    -against-

OFFICE OF FOREIGN ASSETS CONTROL;
SCOTT BESSENT, in his official capacity as
Secretary of the Treasury; and BRADLEY T.
SMITH, in his official capacity as Director of the
Office of Foreign Assets Control,
                    Defendants.

Civil Action No. [O]

**COMPLAINT FOR**
**DECLARATORY AND**
**INJUNCTIVE RELIEF AND**
**RELIEF IN THE NATURE OF**
**MANDAMUS**

Plaintiff Mistyrise International Limited, by and through undersigned counsel, pursuant to

5 U.S.C. § 706, 28 U.S.C. § 1361, and other appropriate authority, hereby files this complaint and

petitions this Court to issue a Declaratory Judgment, Injunctive Relief, or, alternatively, a Writ of

Mandamus compelling the United States Department of the Treasury, Office of Foreign Assets

Control, to act on pending applications that would authorize Mistyrise to enforce its judgment

against blocked Venezuelan funds. As explained herein, Mistyrise seeks declaratory and injunctive

relief, relief in the nature of mandamus, and other appropriate relief because OFAC has violated

the Administrative Procedure Act, 5 U.S.C. § 551, et seq., as of June 15, 2026, more than four

years (approximately 50 months) will have elapsed since the initial license application was

submitted.

## PARTIES

1.      Plaintiff Mistyrise International Limited ("**Mistyrise**" or "**Plaintiff**") is a company

organized and existing under the laws of the British Virgin Islands, with a United States address

c/o 8601 NW 27th Street, Suite 764016, Doral, Florida. Mistyrise is not a "vulture fund," but rather

a family-owned company that fulfills a savings custodial role aimed at family stability. Its

51466506v.12
51466506v.13

registered address is Chambers, P.O. Box 146, Road Town, Tortola VC1110, British Virgin Islands.

2.      Defendant Office of Foreign Assets Control ("**OFAC**") is a federal agency within the United States Department of the Treasury, located at 1500 Pennsylvania Avenue, NW, Washington, DC 20220. OFAC is responsible for administering and enforcing economic and trade sanctions against targeted foreign countries, regimes, and other entities. OFAC enforces the Venezuela Sanctions Regulations ("**VSR**"), 31 C.F.R. Part 591, which is a set of regulations prohibiting transactions between U.S. persons and certain individuals that fall under the VSR, whose property or interests in property are blocked pursuant to 31 C.F.R. § 591.201.

3.      Defendant Scott Bessent is sued in his official capacity as the Secretary of the Treasury. Pursuant to the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq., and Executive Order 13692, as expanded and amended by subsequent Executive Orders concerning the situation in Venezuela, the Secretary has authority to administer and enforce the Venezuela Sanctions Regulations, 31 C.F.R. Part 591, and has delegated day-to-day administration and enforcement to the Office of Foreign Assets Control.

4.      Defendant Bradley T. Smith is sued in his official capacity as the Director of the Office of Foreign Assets Control and is responsible for implementing and enforcing the VSR (together with OFAC and Defendant Scott Bessent, the "**Defendants**").

## **JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Administrative Procedure Act, 5 U.S.C. § 551 et seq., and the Mandamus Act, 28 U.S.C. § 1361.

6.      This Court is authorized to grant the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, 5 U.S.C. § 706, and 28 U.S.C. § 1361.

-2-

51466506v.12
51466506v.13

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events and omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

8. The underlying Default Judgment that Plaintiff seeks to enforce was entered by the Supreme Court of the State of New York, County of New York, in *Mistyrise Int'l Ltd. v. Corporación Eléctrica Nacional, S.A.*, Index No. 655219/2021.

9. Following entry of the Default Judgment, Plaintiff conducted post-judgment discovery in New York and identified assets located in this District that are available to satisfy the Default Judgment.

10. Plaintiff subsequently obtained orders of attachment from the Supreme Court of the State of New York with respect to assets located in this District, including funds held at Citibank, N.A. in New York and funds held at the Federal Reserve Bank of New York.

11. The New York State Supreme Court expressly recognized that Plaintiff's ability to execute upon the attached assets is contingent upon authorization from the Office of Foreign Assets Control. Defendants' failure to act on Plaintiff's License Applications has therefore prevented Plaintiff from enforcing a New York judgment and related New York attachment orders against assets located in this District.

12. Because the judgment Plaintiff seeks to enforce was entered in New York, the attachment proceedings occurred in New York, the attached assets are located in New York, and the practical effect of Defendants' failure to act is the continued inability to enforce those New York orders against property located in this District, a substantial part of the events and omissions giving rise to this action occurred in the Southern District of New York.

51466506v.12
51466506v.13

13.    Venue is also proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(C) because no real property is involved in this action and Plaintiff is subject to personal jurisdiction in this District.

**BACKGROUND**

**I.    MISTYRISE'S ORIGINAL ACTION AND UNDERLYING CLAIMS AND DEFAULT JUDGMENT IN MISTYRISE'S FAVOR**

14.    Plaintiff Mistyrise is the beneficial owner of senior notes issued by Corporación Eléctrica Nacional S.A. ("**CEN**"), a state-owned enterprise wholly owned and controlled by the Bolivarian Republic of Venezuela ("**Venezuela**").

15.    After CEN failed to make contractually required principal and interest payments when due approximately eight years ago, on April 10, 2018, and after exhausting all amicable collection efforts, Mistyrise commenced an action on August 27, 2021, in the Supreme Court of the State of New York, County of New York, asserting claims for breach of contract under the governing indenture and New York law. The action is captioned *Mistyrise Int'l Ltd. v. Corporación Eléctrica Nacional, S.A.,* Index No. 655219/2021 (N.Y. Sup. Ct., N.Y. Cnty. filed).

16.    CEN failed to appear or otherwise defend the action.

17.    On August 29, 2022, the New York Supreme Court entered a default judgment in favor of Mistyrise and against CEN in the amount of $24,466,630.49, plus statutory post-judgment interest (9% annually, per NY CPLR § 5004) (the "**Default Judgment**").

18.    The Default Judgment remains valid, final, and unsatisfied.

**A.    Discovery of Assets at Citibank and Grant of the Citibank Attachment**

19.    Following entry of Default Judgment, Mistyrise undertook post-judgment discovery to identify assets available to satisfy the Default Judgment.

-4-

20.    On January 30, 2023, the Supreme Tribunal of Justice of Venezuela in exile explained that payments corresponding to the bonds owned by Mistyrise were to be made with funds frozen pursuant to sanctions and deposited in the U.S. dollar-denominated bank accounts of the Central Bank.

21.    Through discovery directed to Citibank, N.A. ("**Citibank**"), Mistyrise learned that funds traceable to payment of CEN's debt obligations were held in accounts maintained by Citibank in New York, belonging to the Venezuelan Ministerio del Poder Popular de Economía y Finanzas ("**Ministry of Finance**"), a political subdivision of Venezuela. At the time of discovery, the account held, at a minimum, the amount of USD 10,318,331.23, resulting from a transfer approved by Citibank.

22.    Those funds were historically used to make payments on the same category of debt instruments at issue in the Default Judgment and were later transferred by Citibank into a blocked sanctions account pursuant to U.S. sanctions regulations administered by the Office of Foreign Assets Control.

23.    To preserve the availability of those funds pending receipt of authorization from the Office of Foreign Assets Control, Mistyrise moved in New York Supreme Court for an order of attachment pursuant to CPLR §§ 6202 and 6205.

24.    On December 20, 2024, the court issued a Decision and Order granting Mistyrise's motion for attachment (the "**Citibank Attachment**").[1] The court held, among other things, that:

      a.    CEN is an agency or instrumentality of a foreign state within the meaning of the Foreign Sovereign Immunities Act;

---

[1] *Mistyrise Int'l Ltd. v. Corporación Eléctrica Nacional, S.A.,* Index No. 655219/2021, Decision and Order on Motion (Mot. Seq. No. 003) (N.Y. Sup. Ct., N.Y. Cnty. Dec. 20, 2024)

-5-

b.   Mistyrise is a judgment creditor entitled to seek attachment in aid of execution; and

c.   Mistyrise may attach funds held at Citibank, N.A. in which CEN has a beneficial interest, including funds held in a blocked sanctions account.

25.   The attachment order expressly contemplated that Mistyrise could not take possession of, or execute upon, the attached funds unless and until a specific license was issued by the Office of Foreign Assets Control authorizing such transfer.

**B.   Discovery of Assets at Federal Reserve Bank of New York and Grant of the FRBNY Attachment**

26.   Through subpoenas and post-judgment discovery, Mistyrise identified two U.S. dollar accounts held by the Central Bank of Venezuela at the Federal Reserve Bank of New York (the "**FRBNY**") as containing funds earmarked for payment of CEN's obligations. At the time of discovery, one account held approximately $90 million and the other held approximately $952,000.

27.   Citibank records further showed that, immediately prior to historical payments on the notes, funds were transferred from the Central Bank of Venezuela in the exact amounts subsequently paid through Citibank, confirming that Central Bank of Venezuela funds were used to satisfy CEN's debt obligations.

28.   Based on this evidence, Mistyrise moved for a further order of attachment seeking to restrain transfer of the Central Bank of Venezuela funds held at the FRBNY, pending authorization from OFAC.

29.   On August 6, 2025, the New York Supreme Court granted Mistyrise's motion and issued an order attaching the Central Bank of Venezuela funds held at the FRBNY (the "**FRBNY Attachment**", and, together with the Citibank Attachment, the "**Attachment Orders**").

30.     In that decision, the court reaffirmed its prior findings that CEN qualifies as a foreign state for purposes of the Foreign Sovereign Immunities Act or, alternatively, that Venezuela is its alter ego.

31.     The court further held that the attached funds were not immune from attachment because:

    a.  CEN waived immunity from attachment in aid of execution under the governing indenture;

    b.  the funds were used for the commercial activity upon which Mistyrise's claim is based, namely payment of debt obligations under the notes;

    c.  CEN holds a beneficial interest in the Central Bank of Venezuela funds within the meaning of CPLR §§ 5201(b) and 6202;

32.     The court expressly recognized that, under applicable law and OFAC guidance, Mistyrise was required to obtain an order of attachment to provide formal notice of its right to such funds and prevent movement pending approval of a specific license from the Office of Foreign Assets Control.

### C.     Necessity of OFAC Licensing

33.     As a result of U.S. sanctions regulations, the attached funds cannot be released to Mistyrise absent authorization from OFAC.

34.     Mistyrise and its previous counsel, Brown Rudnick LLP, have applied for three specific licenses before OFAC:

    a.  License application 2022-912406, submitted on April 7, 2022, by Mistyrise as the applicant ("**License Application One**"), filed shortly after obtaining the Default Judgment, with the aim to execute and collect on the Default Judgment;

-7-

b.    License application 2022-975599, submitted on May 10, 2022, by Brown Rudnick as the applicant ("**License Application Two**"), to be able to execute and collect on the Default Judgment on behalf of Mistyrise and to hold the collected judgment in Mistyrise's trust account;

c.    License application submitted on April 17, 2023, by Mistyrise and Brown Rudnick as applicants ("**License Application Three**", and together with License Application One and License Application Two, the "**License Applications**"), to collect from funds held in North American banks that the Supreme Tribunal of Justice of Venezuela in exile identified;

35.    In addition to the License Applications, Mistyrise, through its counsel, has repeatedly followed up on the proceedings by means of email communications and telephone calls, there being no other administrative means available to pursue the License Applications. Counsel has repeatedly been told that the License Applications remain "under review" with no indication as to when the "review" process will be completed and a decision made on the Applications.

36.    Despite the existence of the Default Judgment and two valid court-ordered attachments, and notwithstanding Mistyrise's repeated communications and requests, the absence of timely action by OFAC has prevented Mistyrise from enforcing the Default Judgment, has effectively nullified the relief granted by the New York court and has caused considerable harm to the Plaintiff.

37.    As of June 15, 2026, (i) nearly four years have elapsed since entry of the Default Judgment, (ii) over four years have elapsed since License Application One and License Application Two were submitted, and (iii) over three years have elapsed since License Application Three was submitted. After more than eight years of nonpayment and over four years awaiting

-8-

action on the License Applications, Mistyrise's and its owners' financial resources have been substantially exhausted.

38.    While Mistyrise and its owners continue to suffer the severe consequences described above as a result of OFAC's prolonged inaction, OFAC has, during the same period, issued, amended, and renewed Venezuela-related general licenses and other authorizations affecting significant commercial activity involving Venezuela.

39.    OFAC has thus acted with dispatch to facilitate advisory and commercial engagement with Venezuela for the benefit of large market participants, while simultaneously maintaining the very restrictions that prevent Mistyrise from collecting on an existing, valid judgment. This disparate treatment underscores the arbitrary and unreasonable nature of OFAC's delay.

### D.    OFAC's Sanctions Have Caused Compounding Harm to Mistyrise

40.    OFAC's prolonged inaction on the License Applications is not the first instance in which the sanctions regime administered by OFAC has deprived Mistyrise of its contractual right to payment. To the contrary, the very default that gave rise to Mistyrise's claims, and ultimately to the Default Judgment, was itself a direct consequence of the OFAC's sanctions;

41.    On January 30, 2023, the Supreme Tribunal of Justice of the Bolivarian Republic of Venezuela in exile, acting through its Sala de Casación Social, issued Official Letter No. 2023-001 (the "**TSJ Letter**"), addressed to a bondholder of the EDC-2018 notes (ISIN: XS0356521160; CUSIP: P6128SAJ4), the same series of notes owned by Mistyrise. In the TSJ Letter, a member of the tribunal confirmed that payment of the EDC-2018 bonds "*sólo se podrá solventar con los fondos en depósito congelados por las sanciones, que existen en las cuentas bancarias Norteamericanas, denominadas en dólares estadounidenses ($) del Banco Central de Venezuela (BCV)*" (can only be settled with funds frozen by the sanctions that exist in the U.S. dollar-

-9-

denominated bank accounts of the Central Bank of Venezuela), as well as funds held in accounts belonging to the Fondo para el Desarrollo Nacional (FONDEN) and Venezuelan funds held by international securities clearing systems such as Euroclear and Clearstream. The TSJ Letter further confirmed that such funds, once released by OFAC, would "*sin duda alguna, honrar[ían] perfectamente el capital y sus respectivos intereses adeudados a los tenedores de los bonos EDC-2018*" (would without any doubt perfectly honor the capital and respective interest owed to the holders of the EDC-2018 bonds). A true and correct copy of the TSJ Letter is annexed hereto as Exhibit A;

42.    On May 13, 2026, the Vicepresidencia Sectorial de Economía of the Bolivarian Republic of Venezuela issued an official communiqué (the "**May 2026 Communiqué**") announcing a formal process for the restructuring of Venezuela's external public debt, including the debt of its state-owned enterprises. In the May 2026 Communiqué, the Government of Venezuela expressly acknowledged that "*Venezuela demostró a lo largo de los años solvencia y cumplió con todas sus obligaciones internacionales, con capacidad y voluntad por cubrir sus compromisos, hasta que se vio impedida a partir del año 2017, producto de las sanciones financieras*" (Venezuela demonstrated solvency over the years and met all of its international obligations, with the capacity and willingness to honor its commitments, until it was prevented from doing so beginning in 2017 as a result of financial sanctions). A true and correct copy of the May 2026 Communiqué is annexed hereto as Exhibit B;

43.    Taken together, the TSJ Letter and the May 2026 Communiqué demonstrate that the funds necessary to satisfy CEN's obligations under the EDC-2018 notes existed and were available for payment, but were rendered inaccessible to CEN by the U.S. sanctions program administered by OFAC. It was the imposition and enforcement of those sanctions, beginning in

-10-

August 2017, that caused CEN's default on the notes in April 2018, thereby triggering the chain of events that led to Mistyrise's commencement of litigation, the entry of the Default Judgment, and the issuance of the Attachment Orders; and

44.     OFAC's actions have thus harmed Mistyrise at every critical juncture: first, by blocking the funds that would have been used to make timely payments on the notes, thereby causing the default; and now, by failing to act on the License Applications for over four years, thereby preventing Mistyrise from collecting on a final and valid judgment entered in its favor by a court of competent jurisdiction. The cumulative and compounding effect of OFAC's conduct, first causing the very default that gave rise to Mistyrise's claims and then indefinitely delaying the only administrative remedy available for Mistyrise to enforce its judgment, underscores the unreasonableness, arbitrariness, and inequity of OFAC's continued inaction.

## FIRST CLAIM

## II.    DECLARATORY JUDGMENT DECLARING THAT THERE HAS BEEN UNREASONABLE DELAY IN VIOLATION OF 5 U.S.C. § 706(1)

45.     Mistyrise repeats and realleges the allegations in Paragraphs 1-44 above as if set forth at length herein.

46.     By failing to act on Mistyrise's License Applications, OFAC has materially impaired Mistyrise's ability to enforce the Default Judgment and has, as a practical matter, nullified the relief expressly granted by the New York court. This inaction has compounded the harm caused by CEN's default on its senior notes by preventing Mistyrise from realizing the judgment to which it is legally entitled. OFAC's continued withholding of approval has not only delayed making Mistyrise whole, but has also forced Mistyrise to incur substantial and unnecessary additional costs in pursuing enforcement efforts that remain wholly contingent on OFAC's issuance of the requested License Applications.

51466506v.12
51466506v.13

47.     Under the Administrative Procedure Act, a "person suffering legal wrong because of agency action...is entitled to judicial review thereof." 5 U.S.C. § 702.

48.     "Agency action" includes "failure to act." 5 U.S.C. § 551(13);

49.     A court reviewing an agency action "shall...compel agency action unlawfully withheld or unreasonably delayed...." 5 U.S.C. § 706(1).

50.     The absence of a statutory or regulatory deadline for acting on a license application does not confer upon OFAC the right to postpone a decision indefinitely. See 5 U.S.C. § 706(1). More than four years have elapsed since License Application One and License Application Two were submitted, and more than three years have elapsed since License Application Three was submitted, yet OFAC still has not acted on the License Applications, notwithstanding its issuance of numerous Venezuela-related licenses and authorizations during the same period, including authorizations facilitating commercial activity and debt-restructuring-related services involving Venezuela. Thus, OFAC's action on the License Applications has been unreasonably and arbitrarily delayed.

51.     The granting of the License Applications, and the eventual payment of the judgment with funds from the attached accounts, would not imply any violation of or prejudice to United States policies, including foreign policy, national security policy, counterterrorism policy, or counternarcotics policy, but would simply allow Mistyrise to recover its claim, which is commercial in nature, in accordance with what has already been decided by the Supreme Court of the State of New York.

52.     Mistyrise has been irreparably harmed by OFAC's unreasonable delay in granting the License Applications, has no adequate remedy at law, and the equities of this case favor Mistyrise.

51466506v.12
51466506v.13

53.     Mistyrise is entitled to mandatory injunctive relief ordering OFAC to resolve the License Applications.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mistyrise International Limited respectfully requests that the Court enter judgment in its favor and grant the following relief:

A.     A Declaration,  pursuant to 28 U.S.C. §§ 2201–2202, that Defendants' failure to act on Mistyrise's pending License Applications constitutes agency action unlawfully withheld or unreasonably delayed in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1);

B.     An Order compelling, pursuant to 5 U.S.C. § 706(1) and 28 U.S.C. § 1361, Defendants to take final agency action on Mistyrise's License Applications within a date certain to be set by the Court;

C.     An order awarding Mistyrise its costs and reasonable attorneys' fees; and

D.     An order granting such other and further relief as the Court deems just and proper.

June 15, 2026

By:  _____

Thomas E. Butler
White and Williams LLP
810 Seventh Avenue, Suite 500
New York, NY 10019
butlert@whiteandwilliams.com
212-714-3070

-13-